1  Jesse Lee Vint, III
   8117 W. Manchester Ave., #600
2  Playa Del Rey, CA 90293
   Phone: (360) 609-2200
3  Email: jessevint@hotmail.com

4  Plaintiff, in Pro Per

5

6

7              **UNITED STATES DISTRICT COURT FOR THE**
                **CENTRAL DISTRICT OF CALIFORNIA**
8                      **WESTERN DIVISION**

9  JESSE LEE VINT III,                    Case No.:  2:20-cv-06787 GW (MRWx)

10              Plaintiff,                 **PLAINTIFF JESSE LEE VINT III'S**
                                           **OPPOSITION TO DEFENDANT'S**
11     *vs.*                               **MOTION TO DISMISS THE SECOND**
                                           **AMENDED COMPLAINT**
12
   UNIVERSAL STUDIOS
13 COMPANY, LLC; MAX BAER JR.,              Date:     April 27, 2021
   ROGER CAMRAS, BOB GALE,                  Time:     8:30 a.m.
14 ROBERT ZEMECKIS *and* DOES 1-            Room:     9D
   100, inclusive,                         Judge:    Hon. George H. Wu
15
              Defendants.
16

17         Comes now, Plaintiff JESSE LEE VINT III (hereinafter "Plaintiff" or

18 "Vint") submits his Memorandum of Points and Authorities in Support of his

19 Opposition to the Defendants' Motion to Dismiss Plaintiff's Second Amended

20 Complaint (hereinafter "SAC").

                                    - 1 -

1          <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2     **I.     STATEMENT OF FACTS**

3          Plaintiff Jesse Vint is an American actor, film director and screenwriter. Vint

4     began working on his screenplay "Fathers and Sons" in mid-February 1984. He had

5     a long working relationship with the Defendants, and when a project that the parties

6     were working on was cancelled, Plaintiff informed Defendants that he would continue

7     working on this screenplay.

8          During this time, Vint conceived and disclosed a story idea based upon a

9     teenager who travels back into time from the year 1984, and meets his parents in high

10    school in the year 1955 when he and his parents are all the same.  This story idea is

11    the basis for the entire *Back to the Future* empire.

12         The story idea was inspired by Plaintiff's son, Jesse Lee Vint 4th, who was

13    fifteen years old in 1984.  Plaintiff was born in 1940. Plaintiff Vint decided to write a

14    story based on the idea that his son would travel back into time when Plaintiff his self

15    was 15 years old.  That would be the year 1955.

16         The evidence can be examined using a forensic approach, which will reveal

17    that the story idea is inseparable to Plaintiff Vint, as he is identified as a positive match

18    to the story idea analogous to how DNA is used for positive identification purposes.

19    The story idea is unequivocally and organically bonded to Plaintiff Vint.

20    / / / /

1    ## II.    STANDARD OF REVIEW

2         Dismissal under Federal Rule of Civil Procedure 12(b)(6) "is appropriate

3    only where the complaint lacks a cognizable legal theory or sufficient facts to

4    support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521

5    F.3d 1097, 1104 (9th Cir. 2008). When deciding whether to grant a motion to

6    dismiss, the court may consider material submitted as part of the complaint or relied

7    upon in the complaint, and may also consider material subject to judicial notice. See

8    *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

9         Because of the drastic nature of a motion to dismiss and the importance of

10   safeguarding a plaintiff's right to a trial, "to affirm this type of dismissal, it must

11   appear to a certainty that the plaintiff would not be entitled to relief under any set of

12   facts that could be proved." *W. Reserve Oil & Gas Co. v. New*, 765 F.2d 1428, 1430

13   (9th Cir. 1985); see also, *Halet v. Wend Inv. Co.*, 672 F.2d 1305, 1309 (9th Cir.

14   1982).

15        The court must accept as true all allegations of material fact offered by the

16   non-moving party and draw all justifiable inferences in the light most favorable to

17   the non-moving party. See *N. Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 580

18   (9th Cir. 1983).

19        In the event a complaint is deemed deficient, "[i]t is black-letter law that a

20   district court must give plaintiffs at least one chance to amend… absent a clear

- 3 -

1  showing that amendment would be futile." *Nat'l Council of La Raza v. Cegavske*,

2  800 F.3d 1032, 1041 (9th Cir. 2015); *see also Martin v. Tradewinds Beverage Co.*,

3  No. CV16-9249 PSG (MRWX), 2017 WL 1712533, at *12 (C.D. Cal. Apr. 27,

4  2017) ("The Court… may deny leave to amend if plaintiff has repeatedly failed to

5  cure deficiencies or if amendment would be futile."). In the event that the Court

6  finds Plaintiff's allegations insufficient, Plaintiff requests leave to amend the Second

7  Amended Complaint.

8  **III.  ARGUMENT**

9  **A. <u>The Delayed Discovery Rule Is Applicable To This Case.</u>**

10  The court in *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110) stated,

11  "Under the [delayed] discovery rule, the statute of limitations begins to run when the

12  plaintiff suspects or should suspect that [his or] her injury was caused by

13  wrongdoing, that someone has done something wrong to [him or] her." This has

14  nothing to do with the plaintiff having any legal knowledge as to whether some

15  California recognized cause of action exists.  For a plaintiff, the concepts of

16  "plagiarism" "intellectual property theft" qualify in applying the *Jolly* decision as

17  "wrongdoing."

18  The *Jolly* court held delayed discovery suspends (delays, extends,

19  lengthens) the statute of limitations ("SOL") deadline by not starting the SOL time

20  period until the Plaintiff / victim discovers (or by the exercise of reasonable

1   diligence should have discovered), both: (a) the injuries or harm; and (b) that the

2   harm was caused by the wrongdoing of the defendant / perpetrator.   See *Jolly*, p.

3   1109.

4          While Defendants cite various cases to refute the delayed discovery rule is

5   not applicable in this instant case, their authorities are not persuasive.  The *Jolly*

6   court ruled where it would be manifestly unjust to deprive a plaintiff of a cause of

7   action before he is aware he or she has been injured, the delay discovery rule can, in

8   many types of cases, be applied.

9          The *Jolly* court determined the terms "wrong," "wrongdoing" and

10  ""wrongful" are not to be construed in the technical context that Defendants assert

11  their arguments.  The *Jolly* court held the terms "wrong," "wrongdoing" and

12  "wrongful" are to be interpreted in their "lay understanding," as Jesse Vint

13  construed this situation.  See *Jolly*, p. 1110, footnote 7.

14         The issue is not, as the Defendants argue, based upon whether the Plaintiff

15  knew he had a legal cause of action to allege.  The issue is when Plaintiff Vint

16  understood that he had been defrauded.  As the *Jolly* court phrases the issue, it is the

17  "discovery of facts, not their legal significance" that determines the accrual of a

18  cause of action *(i.e.,* starting date of the statute of limitations). (*Jolly* at p. 1113).

19  / / /

20  / / / /

1    **B. <u>Equitable Tolling Applies to This Case</u>.**

2    The California Supreme Court in *Bollinger v National Fire Ins. Co.* (1944)

3    25 Cal. 2d 399, 411 held the SOL may be equitably tolled (extended, suspended, put

4    on hold) under certain circumstances, such as when interference by the defendant's

5    conduct contribute to the plaintiff's delay in filing suit.  In the instant case, Vint

6    alleges that Defendants lied about the date of creation of the story idea, which was

7    hidden for years until Plaintiff discovered the wrongdoing in 2019.

8    California courts in *Collier v. City of Pasadena* (1983) 142 Cal. App. 3d

9    917, 924-926, and *Myers v. County of Orange* (1970) 6 Cal. App. 3d 626, 634

10   identified another rule that provides plaintiffs an alternative second legal ground for

11   tolling the SOL.  Under this scenario, the limitations period is extended when a

12   person has several legal remedies and, "reasonably and in good faith" or "timely"

13   (within the SOL) pursues one of them, but believes the second "similar" claim

14   cannot be filed until the first remedy is pursued.

15   Under this legal theory, the plaintiff is not prejudiced because the first claim

16   alerts the plaintiff to investigate the facts which form the basis for the second

17   factually similar claim.  The court in *Vu v. Prudential Prop. & Cas. Ins. Co.* (2001)

18   26 Cal. 4th 1142, 1152 imposed *estoppel* to be appropriate when an insurance

19   company misled its insured claimant to not file a lawsuit until after the statute of

20   limitations had run.

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

1    In the instant case, Jesse Vint alleged that he interviewed attorneys to

2  pursue his legal cause of action for copyright infringement and related claims.

3  However, Vint believed fraud was required to establish his case, and such

4  concealment by the Defendants was not discovered until 2019.

5    **C. <u>The Instant Case Is Distinguished from <em>Benay</em></u>.**

6    The Moving Parties cite and misapply *Benay v. Warner Bros.*

7  *Entertainment, Inc*. 607 F.3d 620 (9th Cir. 2010).  The Moving Defendants quote

8  *Benay*, in which the Ninth Circuit listed six elements that define a breach of

9  implied-in-fact contract (Motion, p. 15, lines 7-17).  However, the instant case is

10  distinguished from the facts in *Benay*.

11    The plagiarism that occurred in the instant case with Plaintiff Vint is

12  entirely different.  Unlike *Benay*, there existed a previous financial relationship

13  between Plaintiff Vint and the defendants of Max Baer Productions.  Here are some

14  examples:

15    **1.   The Implied-In-Fact Contract Already Existed Between the**

16  **Parties Before Vint Revealed His Story Idea.**  Max Baer Productions previously

17  hired Plaintiff Vint as a writer twice for other projects, and paid him for both jobs.

18  Since this fact is true, it only follows as logic that if the Moving Defendants used

19  Plaintiff Vint's unique story idea for a third time, then Vint reasonably expected to

20  be paid for the idea just as he was previously paid for the two other projects.  There-

1  fore, an implied-of-fact contract already existed between the defendants of Max

2  Baer Productions and Plaintiff Vint.  As this fact is so, the instant case is

3  distinguished from *Benay* case.

4        **2.   Plaintiff Vint's Disclosure of the Story Idea Was Induced By**

5  **Fraud.**  Vint disclosed his idea to Defendant Roger Camras of Max Baer

6  Productions to vindicate himself because he was wrongfully accused of writing a

7  sequel to the screenplay, *Hometown USA*, previously written by Plaintiff Vint.  Max

8  Baer Productions already owned *Hometown USA*.  Therefore, Max Baer Productions

9  owned any sequel to *Hometown USA*.

10       The accusation of a sequel forced Plaintiff Vint to clarify secret details of

11  his new project which eventually materialized into *Back to the Future*.  Vint did not

12  volunteer the information as a gift, but disclosed the story idea to vindicate himself

13  from his project being branded a sequel.  To prove that his latest project was

14  original, Vint explained this new story idea was set in the same time period of the

15  mid-fifties, just like *Hometown USA*, but this script is unique because it was

16  essentially a time travel script about a father and son.

17       Plaintiff Vint then unfolded the rest of the details, revealing that "a teenager

18  that travels back in time from 1984 to 1955 and meets his parents in high school,

19  who are the same age as he." And that, "It is about me and my son, Jesse 4th, and it

20  has not one thing to do with a sequel of any kind."

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

1    Vint was forced to disclose his own original brainchild story idea to the

2    defendants to dispute their false claim of ownership to his project as a sequel.

3    Therefore, this case is distinguished from the facts in *Benay*.

4        **3.   Defendants Approached Plaintiff Vint With An Offer To Use**

5    **His Story Idea, But Vint Declined.**  Upon learning of Plaintiff's Story Idea,

6    Defendant Max Baer Productions then called Plaintiff Vint back with an elaborate

7    idea of their own.

8        Max Baer Productions proposed Vint to develop a plot of their own.  This

9    concept involved the time traveler to be a Beverly Hillbillies buffoon, Max Baer Jr.,

10   who travels back in time to meet his father, the legendary late heavyweight

11   champion Max Baer Sr.  For this version, the father and son who are now the same

12   age have an all-out war in the ring.  Defendants told Vint that this story could be a

13   boxing film bigger than Rocky.

14       Vint regarded Max Baer Jr. as untrustworthy after learning how Max Baer Jr.

15   plagiarized the script *Macon County Line*.  Max Baer Jr. also had previously

16   destroyed Vint's mid-fifties script *Hometown USA* by turning it into a slapstick

17   farce.  Vint flat out rejected their offer, saying that he "would never work with Max

18   Baer Jr., not even with a gun to his head."

19       Max Baer Productions intimated to Vint that they were ready to buy the script

20   if Plaintiff Vint would make the script changes, but Vint adamantly declined.  As

- 9 -

this fact is so, the instant implied-in-fact contract is distinguished from the implied-in-fact contract in *Benay*.

**4.   The Instant Case is One of First Impression**.  Plaintiff Vint's situation is unprecedented in several respects.  There was already an existing implied-in-fact contact between Plaintiff Vint and Max Baer Production, which was established by a previous writer-for-hire relationship on two separate occasions.

The steps taken to achieve such an implied-in-fact privity of contract relationship are different than the *Benay*.  The causation of the implied-in-fact contract between Plaintiff Vint and Max Baer Production is no less legitimate as the implied-in-fact contract in *Benay*.

**5.   The Privity of Contract Between Plaintiff and the Moving Defendants Remains In Effect To This Day**: There are witnesses who have direct knowledge of the fact that Max Baer Productions was sued for plagiarism and intellectual property theft in the past.  Plaintiff Vint knew this, and was entirely within his right to decline the offer to produce his screenplay by changing the story to have actor Max Baer Jr. traveling back into time and meeting his legendary American heavy-weight champion father, Max Baer Sr.

Plaintiff Vint declined their offer, knowing from past professional experience as a writer that Max Baer Jr. is untrustworthy. But Max Baer Productions evidently came up with another plan to cash in on Plaintiff Vint's story idea.

- 10 -

1    Max Baer's good friend and chief editor for his films at the time was Frank

2 Morriss.  Frank Morriss was also good friends with writers Bob Gale and Robert

3 Zemeckis. In fact, Frank Morriss was not just the chief editor for Max Baer

4 Productions, he was also the chief editor for Robert Zemeckis, who directed the

5 film, *Romancing The Stone*.  Frank Morriss was working on that film at the time

6 Plaintiff Vint's idea was stolen and taken to Bob Gale and Robert Zemeckis.

7    Any trier of fact will easily connect these simple dots to conclude that

8 privity of contract with moving defendants happened in the past and are still in

9 effect to this very day.  Again, Plaintiff Vint alleges that the implied-in-fact contract

10 exists in full force to this very day between the Moving Defendants, Bob Gale and

11 Robert Zemeckis, in addition to nonparties Max Baer Jr. and Roger Camras of Max

12 Baer Productions.

13    A deposition of Defendants Gale and Zemeckis in which they testify under

14 oath regarding these facts related to their business with Max Baer Productions

15 would reveal Vint's allegations are true.

16    **D. <u>Defendants Dispute Facts Alleged In the Complaint Only Available</u>**

17    **<u>for a Motion for Summary Judgment, Not A Motion to Dismiss</u>.**

18    The arguments raised in the Motion to Dismiss rely upon disputed facts

19 alleged in the SAC.  For instance, the Motion disputes the allegation in Paragraph 26

20 of the SAC by stating that the "allegation is untrue" (Motion, p. 4, line 6).

1    It is clear that the facts are disputed in this case.  A motion to dismiss should

2    be limited to entirely a legal argument, and not get bogged down disputing facts.

3    The facts are so disputed in this matter that Plaintiff found it necessary to include a

4    declaration with this Opposition paper to clarify the facts.

5    Disputing facts are only reserved for trial, or a motion for summary judgment.

6    There is no place to dispute facts in a motion to dismiss.  The allegations in a motion

7    to dismiss must be assumed to be true so that only the law is applied.  Since the

8    Defendants dispute facts, their Motion is an untimely summary judgment request.

9    **E.  <u>The Complaint States A Cause of Action for Breach of Implied-In-</u>**

10   **<u>Fact Contract</u>.**

11   While the Second Amended Complaint alleges facts that constitute

12   plagiarism and intellectual property theft, the allegations also satisfy the elements

13   and pleading requirements for breach of implied-in-fact contract. Plaintiff Vint

14   recognized plagiarism very quickly upon the release of *Back to the Future*.

15   Frank Morriss was the chief editor for Max Baer Productions, Bob Gale and

16   Robert Zemeckis. In 1985, Vint confronted the chief editor, Frank Morriss.  Morriss

17   rolled down his car window and said, "You can't prove a goddamned thing, Vint,"

18   and then drove away in his Ford Mustang.

19   Following that confrontation with Robert Zemeckis's chief editor, Frank

20   Morriss, the defendants Bob Gale and Robert Zemeckis began their relentless and

- 12 -

1   desperate campaign to backdate the creation of the storyline by several years.  This

2   involved several preposterous stories.

3           **1.   Myth Number One**:  For example, Moving Defendants claimed,

4   "Beginning in 1981 the script was submitted to forty-four major studios in Los

5   Angeles and turned down by every single one of them."  We are now talking about a

6   screenplay that has either been nominated or has won outright every major award

7   worldwide that is possible as "best original screenplay," which means that the

8   authors are supposed to be originators of the story idea.  But, they're not.  Plaintiff

9   is.

10          The truth is, the *Back to the Future* screenplay was never rejected a single

11  time by anybody before 1984.  There was no screenplay prior to 1984. Their very

12  own copyright reads that the date of creation is 1984. Even more preposterous is

13  their story that they submitted their award-winning screenplay to forty-four major

14  studios in Hollywood and not a single one saw the value in the screenplay and

15  decided to move forward with it.

16          **2.   Myth Number Two**: Another example of a preposterous claim is

17  that Gale and Zemeckis declared that they finally in 1984 happened to mention the

18  screenplay to their very good friend, mentor, and business partner, Steven Spielberg.

19  Gale and Zemeckis falsely claim they had already submitted the *Back to the Future*

20  screenplay to essentially every single studio in Hollywood.

1    As the story goes, for several years Gale and Zemeckis faced rejection time

2    after time, failing to get the *Back to the Future* screenplay accepted.  Their luck

3    finally changed when they presented the screenplay to Steven Spielberg's studio.

4    According to Gale and Zemeckis, they already had an existing relationship

5    with Spielberg having done two films with Spielberg already by 1984.  And so now,

6    in 1984, after four years of the *Back to the Future* screenplay being rejected by

7    everyone else, they finally presented the script to their close friend Spielberg.

8    At the tale goes, Steven Spielberg declared the screenplay was "perfect" and

9    decided to move forward with it.  Of course, the Gale and Zemeckis historical

10   account is utter nonsense because according to the version of circulating the

11   screenplay four years before 1984 would backdate the concept to 1980-81.

12   Both of these fables crafted by Gale and Zemeckis are utterly preposterous.

13   These stories would never get past a ten-year-old — and the defense knows it.

14   **IV.  CONCLUSION**

15   For the foregoing reasons, Plaintiff Jesse Lee Vint III respectfully requests

16   that the Defendant's motion be denied in its entirety. If the Court is inclined to Grant

17   this Motion, Plaintiff respectfully requests Leave to Amend.

18

19   Dated: April 5, 2021                          *Jesse Lee Vint, III*
                                              _____
20                                              Jesse Lee Vint, III
                                                Plaintiff, in Pro Per

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

## <u>DECLARATION OF JESSE VINT</u>

I, Jesse Vint, hereby declare as follows:

1.     I am a party in the above-entitled action, over the age of 18, and have direct knowledge as to the facts in this matter.  I make this declaration under the penalty of perjury under the laws of the United States and the State of California.  I could and would competently testify to the facts asserted in this Declaration.

**Plaintiff Vint's DNA Analogy Is Persuasive.**

2.     Just as cases are tolled in modern times by the introduction of DNA evidence, the technological advance of the Internet and search engines as a modern research tool is just as vital and important as the advent and use of DNA for criminal cases.

3.     To acquire the necessary proof absolute that goes beyond overwhelming circumstantial evidence, the Internet as a research tool has played an absolutely crucial and pivotal role in Plaintiff Vint's discoveries.  The search engine power of the Internet should also toll the statute of limitations in this case exactly as the advent of DNA as a modern research tool has tolled the statute of limitations in countless modern day criminal cases.

4.     The modern research by professional investigators I hired found that the defendants very own copyright reveals that the date of creation for *Back to the Future* was 1984, and not 1981, as they have stated in countless well-known public

- 1 -

1   interviews, Wikipedia as only one example among many. This unquestionably

2   reveals that the Defendants Gale and Zemeckis clearly attempted to backdate the

3   film in public interviews in which they said the screenplay was created in 1981.

4   **The Creation Date of 1984**:

5   5.      The 1984 date is well documented, proving that the screenplay did not

6   exist before 1984, the year that it was stolen from Plaintiff Vint.

7   6.      Plaintiff Vint's professional investigator through the use of modern

8   internet search engines also found that the copyright was mislabeled as 1986

9   (instead of 1984) and hidden among an unprecedented four hundred and seventy-

10  four copyrights (474) for the movie *Back to the Future*.

11  7.      It's fair to say that no layman could be expected to find this screenplay

12  copyright, particularly since it was hidden by labeling it with the wrong year (1986).

13  8.      Defendants Gale and Zemeckis mislabeled the copyright for the movie as

14  1986, and made it extremely difficult for even a professional to find among 474

15  other copyrights, since the movie *Back to the Future* was released a year prior to

16  that date (1985). It was Universal Studios that mislabeled the creation date.  I

17  believe, have alleged, and can prove Defendants Gale and Zemeckis intentionally

18  mislabeled the date of creation so that it could not be easily found.  Defendants will

19  not, cannot, and are not able to name another film out of hundreds of Universal's

20  films that this strange occurrence has ever happened before.

9.    *Back to the Future* is perhaps the only film on record ever released that was copyrighted after its release, the release year being 1985. Why was it copyrighted after its release, and not before, like all other films?

10.    No less troublesome was that Plaintiff Vint could no longer copyright his screenplay *Fathers And Sons* because he would now be accused of plagiarism by those that plagiarized his storyline, writer's Bob Gale and Robert Zemeckis.

11.    The delayed discovery due to modern technology resulted in an accrual of evidence that has now weighted the case with unequivocal and decisive information that was not present before with pre-Internet antiquated research tools.  As a result of the new Internet technology and search engines, the case finally matured enough in the year 2019 to become an enforceable claim.  The new information finally validates legal action in the form of a lawsuit against the defendants for plagiarism.

**The Defense's Argument:**

12.    The argument advanced by the Defendants earlier in these proceedings asserted that I personally had copyrighted material, and therefore should have known that the copyrights of other authors can be investigated by anybody.  This claim is utter nonsense.

13.    Logic dictates that just merely because a man gets a haircut does not make him a barber.  Similarly, because he flies on a jet plane does not make him a pilot.

- 3 -

DECLARATION OF JESSE VINT

14.   So likewise, a man who gets a copyright for his work does not make him a sleuth for other authors copyrights and their substance held tightly by the Library of Congress.  This is especially so when one considers the massive amount of copyright material for *Back to the Future*.

**ADDRESSING THE ISSUE OF COPYRIGHT – An Alternative Form of Proof of Authorship other than copyright:**

15.   A copyright has a single purpose, which is to prove authorship. In this highly unusual case, I can incontrovertibly and conclusively prove authorship without the use of a standard copyright.

16.   The storyline idea, which irrefutably is the foundation for the *Back to the Future* billion-dollar empire can be proven far beyond a reasonable doubt to be my brainchild exclusively, because within that "storyline idea" are mine and my son's birthdates. No movie in American history has ever incorporated the birthdates of father and son in a single sentence for the storyline, which makes this case more than unique.  It is absolutely unprecedented.

17.   As a reminder, the storyline idea reads: "A teenager travels back into time from the year 1984 to the year 1955 and meets his parents in high school who are the same age as he."  My son, Jesse Lee Vint 4th, was fifteen years old in 1984. If he traveled back into time to the year when I was fifteen years old, that year would be 1955, since I was born in 1940.

18.    The chances of these numbers being a coincidence cannot be calculated, they are far beyond a million to one.  But so as not to be accused of exaggerating, let's just say a thousand to one.

19.    By whatever means it may be calculated, it is fair to say that these birthdate numbers are an alternative form of hard proof that is at least the equivalent of a registered copyright because this storyline idea that became *Back to the Future* could belong to none other than me.

**Privity of Contract Exists Between Plaintiff and the Moving Defendants**.

20.    The court does not need to be reminded that Privity of Contract is a common law principle that provides that a contract cannot confer rights or impose obligations upon any person who is not a party to the contract.

21.    It's a common-sense law, but as the court knows by now, "Common sense is a very uncommon thing," thus the need for the law.  However, when violation of intellectual property theft and plagiarism can be indicated "far beyond a reasonable doubt" then it is only fair and appropriate that the court give the Plaintiff a chance to be heard in front of his peers.

22.    The trier of fact could easily connect these simple dots to conclude that Vint's privity of contract with the moving defendants happened in the past and are still functioning to this day between the moving defendants Bob Gale and Robert

1  Zemeckis, in addition to other nonparties such as Max Baer Jr. and Roger Camras of

2  Max Baer Productions.

3       23.    Here are the simple dots: Plaintiff Vint alleges that he is "organically

4  bonded" to his story idea that embodies the birth dates of he and his son.  To repeat

5  the story idea again, "A teenager travels back into time from 1984 (when son Jesse

6  Lee Vint 4th was fifteen years old) to the year 1955 (when the father Jesse Lee Vint

7  3rd was also fifteen years old) and the son meets his parents in high-school who are

8  the same age as he."

9       24.    This story line, which provides the heart and soul of the movie *Back to*

10  *the Future* (and could never be made without it) is unique in terms of birth dates

11  only to Plaintiff Jesse Vint, and no one else connected to the movie *Back to the*

12  *Future*.  Plaintiff Vint asserts that the odds of this occurring by chance are greater

13  than a thousand to one, far exceeding the court's criteria far beyond a reasonable

14  doubt.

15  **Plaintiff's Final Plea to the Court:**

16       25.    I implore the Court that as an average American citizen who has served

17  more than honorably in the military, pipelined in the Oklahoma oil fields, worked as

18  a doorman for two years from 12:00 am to 8:00 am in New York City while

19  studying acting and writing, unloaded fifty pound concrete sacks twelve hours a day

20  from boxcars in Texas, drove a cab in California, sold products door to door, mowed

- 6 -

1    lawns, pruned trees, threw newspapers and has handed out fliers while writing

2    during his few spare hours to realize his dream.

3       26.   I never had the resources to hire an attorney that could go up against the

4    high-profile Black Tower Universal Studio attorneys who are in the business (in this

5    case) of shielding their defendants from the truth rather than celebrating it.  But I

6    have the truth on my side.  For once, considering the percentages of lawsuits against

7    "plagiarism," the truth can further be proven beyond a reasonable doubt.

8       27.   I base this opinion on the evidence that will be uncovered in discovery,

9    such as taking the deposition of the four defendants.  They unquestionably colluded

10    with one another to steal a very unique and unusual story line idea that resulted in

11    one of the most valuable movie franchises in cinema history.

12       28.   This case is important not just to me, but for the untold number of

13    creative writers who have had their material plagiarized, and had their careers

14    bulldozed into oblivion as the plagiarizers are then celebrated with international

15    awards, celebrity, and great wealth while shielded from culpability by the

16    Hollywood film industry's massive resources and seemingly infinite power.

17       29.   I am saying my prayers, not just for myself, but for many other writers.

18       30.   It should come as no surprise that the defense is relying heavily on this

19    case being "time-barred" because they can easily see that this case has become

20    increasingly embarrassing for them to defend, for a very good reason.

31.   I did not move forward with a lawsuit at the time of his discovery of the theft of intellectual property on the date of the film *Back to the Future* worldwide release in 1985 simply because, in spite of the overwhelming mathematical probability that is far beyond a thousand to one that the defendants were guilty of intellectual property theft, the evidence was still ultimately circumstantial. Going forward with a lawsuit against Universal Studios would have proven utterly futile and a waste of everybody's time according to every single lawyer that I consulted with at that time.

32.   In short, no attorney would take the case against Universal Studios, whose resources are known to be infinite. This is why I decided to fight for his cause *pro se*.

33.   The editor, Frank Morriss, said to me after I confronted him about the theft, "You'll never be able to prove a goddamned thing, Vint!"  The attorneys that I consulted with agreed with editor Frank Morriss. All of them essentially said, "In a celebrity driven case like this against Universal Studios and their  high-profile attorneys you need proof absolute, so that the case is bulletproof."

34.   Looking back on the O.J. Simpson trial, the Robert Blake murder trial, and the Max Baer Jr. plagiarism trial in 1975 we can see that editor Frank Morriss and every attorney that Plaintiff Vint talked to was absolutely correct. The celebrity of the defendants in these trials was the deciding factor, and with the high-profile

1   movie *Back to the Future* the celebrity of this movie could easily eliminate sound

2   judgment by the jury as was proven beyond a shadow of doubt by the O.J. Simpson

3   case, the Robert Blake murder case, and the 1975 Max Baer Jr. plagiarism case.

4       35.   Well-known actors O.J. Simpson and Robert Blake were accused of

5   murdering their wives, and in spite of mountains of evidence that indicated that they

6   were guilty, it still in the end was circumstantial evidence, so it was not

7   "bulletproof."

8       36.   They were acquitted, as was Max Baer Jr in his 1975 plagiarism case,

9   even though (I know this for a fact) that Defendant Max Baer Jr. completely stole

10   the screenplay which became *Macon County Line*, a movie of which I personally

11   had a starring part in.

12       37.   But even with the Internet, the "proof absolute" in this unusual case of

13   *Vint vs. Universal Studios* is the bulletproof evidence as to the 1984 copyright. At

14   first, this evidence was hidden like a needle in a haystack and was not easy to find,

15   even with a professional investigator.

16       38.   It was the modern tools of today's technology that allowed me to hire

17   professionals to search the Internet, a vital research tool that previously was not

18   available for a common everyday man like me.

19   / / / /

20   / / / /

- 9 -

DECLARATION OF JESSE VINT

1 | **Exhibit 1 of The Second Amended Complaint Is Clear Evidence of the Date of**

2 | **Creation**.

3 |     39.    Exhibit 1 displays the year of the *Back to the Future* copyright to be 1984.

4 | The evidence is clear that the mythical stories of the Defendants that somehow the

5 | story idea predates 1984 are indeed false.

6 |     40.    Screenplay theft, plagiarism, and intellectual property theft is epidemic in

7 | Hollywood because it is so difficult to prove.  But, this case is an exception.  In this

8 | instance, this unique case is not at all difficult to prove.

9 |     41.    What is of paramount importance to me is the reduction of the amount of

10 | plagiarism, idea theft, and idea misappropriation that thrives in the film business. I

11 | am focused on being victorious against these plagiarizers.  Hopefully, this case will

12 | set an example for anyone that is tempted to lie, cheat, and rob their fellow artists of

13 | their creativity so as to create an easy pathway for themselves to the top.

14 | **Appeal to the Court to View this Case as a Precedent.**

15 |     42.    The legal profession and the court rely on case history because similar

16 | facts will likely produce similar outcomes, but in this highly unusual case, which is

17 | without precedent, I entreat the court to examine this case as a legal first that is

18 | without similar facts and therefore a groundbreaking case for the following reasons.

19 |     43.    My story idea, which is the heart and soul to the award-winning box-

20 | office hit *Back to the Future* can easily be proven to be mine and mine alone.  This

- 10 -

1  is so because no screenplay author in American film history has incorporated the

2  birth years of both the father and his son within the description of the story idea,

3  incontrovertibly proving my authorship.

4      44.   As such, a "copyright" proving authorship is not necessary in this case

5  because this story idea proves the authorship of the plaintiff with a mathematical

6  probability that far exceeds a thousand to one or what is known by the court as

7  beyond a reasonable doubt.

8      45.   The story idea is a teenager travels back into time from 1984 (when my

9  son, Jesse Lee Vint 4th was age 15) to the year 1955 (when I was 15 years old) and

10 meets his father in high school when they are both the same age.

11     46.   That is where the numbers 1984 to 1955 came from that define the time

12 travel movie, *Back to the Future*. They are inextricably bound to the birth years of

13 my son and I, which are unique and pertain to no one else involved with the movie,

14 *Back to the Future.*

15     47.   I did not have the screenplay copyrighted because I was still in the

16 process of working on it at the time the story idea was stolen by defendants Camras

17 and Baer, who gave the idea to Defendants Gale and Zemeckis. Film editor, Frank

18 Morriss, was a courier and intermediary between these individuals.  They all knew

19 and worked with Morriss.  Morriss developed a personal and mutual relationship

20 with Max Baer Productions and the writing team of Bob Gale and Robert Zemeckis.

48.    There is no legal precedent or any existing case law that pertains to a screenplay story idea that is proven to be organically bonded to the writer and his son (Jesse Vint 3rd and Jesse Vint 4th) and whose DNA and personal history is inextricably bound to its author in such a way that nothing similar can be found in case history or legal history.

49.    In short, there are no similar cases to rely on for guidance and direction. Therefore, Plaintiff Vint appeals to the court to see this as a unique, historically groundbreaking, and precedent setting case.


I, Jesse Vint, do hereby swear under penalty of perjury under the laws of the State of California and the United States of America that the foregoing assertions are true and correct to the best of my knowledge.

Dated:        April 5, 2021                Respectfully Submitted,




*Jesse Lee Vint, III*
_____
Jesse Vint
Plaintiff, in Pro Per

- 12 -

<u>**CERTIFICATE OF SERVICE**</u>

I am employed in the County of San Bernardino, State of California; I am over the age of eighteen and not a party to the within action.

On April 5, 2021, I served the document(s) described as:

**PLAINTIFF JESSE LEE VINT III's OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**Joel R. Weiner, Esq.**
**Shelby Palmer, Esq.**
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012

on all interested parties in this action as named __X__ below _____ on the attached mailing list by placing __X__ a true copy _____ the original in a separate sealed envelope for each addressee named, with the  name and address of the person served shown on the envelope as follows:

_____   BY MAIL:    I caused such envelope(s), with postage thereon fully prepaid, to be placed in the United States Mail at Apple Valley, California, to the addressee(s) listed above.  I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing contained in the affidavit.

__X__   BY E-SERVICE:  I logged into the Federal Court ECF e-filing web portal, uploaded the document onto the ECF e-file system, and also e-served opposing counsel through the ECF system.

I declare under penalty of perjury the laws of the State of California that the foregoing is true and correct and is executed this April 5, 2021 in Los Angeles, CA.

DENNIS JONES

---

PROOF OF SERVICE